*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD JAY VANDERKOLK,

Plaintiff-Appellant,

v

KALA ROSE BENSHOOF,

Defendant-Appellee.

UNPUBLISHED
November 19, 2025
9:53 AM

No. 371659; 372399
Ottawa Circuit Court
LC No. 24-007695-NO

Before: LETICA, P.J., and M. J. KELLY and MARIANI, JJ.

PER CURIAM.

In Docket No. 371659, plaintiff appeals as of right the underlying opinion and order granting summary disposition in favor of defendant, his ex-wife, in this action alleging defamation, abuse of process, and intentional infliction of emotional distress as well as the order denying plaintiff's motion for reconsideration and motion to file an amended complaint. In Docket No. 372399, plaintiff appeals as of right the trial court's opinion and order determining that plaintiff's action was frivolous and awarding attorney fees and costs of $22,736.22.[1] On appeal, plaintiff contends that the trial court erred in dismissing his complaint,[2] failing to allow him to file an amended complaint, and for awarding attorney fees and costs filing a frivolous action. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In March 2024, plaintiff filed a complaint and demand for jury trial, alleging defamation per se, abuse of process, and intentional infliction of emotional distress. Specifically, plaintiff asserted that he and defendant were divorced but shared three children who attended Black River

---

[1] This Court consolidated these appeals to "advance the efficient administration of the appellate process." *VanderKolk v Benshoof*, unpublished order of the Court of Appeals, entered January 28, 2025 (Docket Nos. 371659 and 372399).

[2] Plaintiff acknowledged that he is not challenging the dismissal of the intentional infliction of emotion distress claim. Accordingly, we do not address it.

Public Schools (BRPS) in Holland, Michigan. On March 6, 2023, defendant purportedly communicated false and defamatory statements to teachers and administrators at BRPS by sending an e-mail indicating that plaintiff had threatened to kill defendant and her second husband and to kidnap defendant's children and take them to a foreign country. Defendant also allegedly represented that plaintiff was violent and a threat to students and staff at the school, and defendant would keep her children home until it was safe for them to return to school.

The complaint further asserted that, on March 8, 2023, defendant filed a request for an ex parte personal protection order (PPO) as well as an ex parte request to suspend plaintiff's parenting time with the former couple's three minor children, then ages 12, 11, and 10. Defendant claimed that the PPO and suspension of parenting time were warranted in light of the violent, extreme, and serious allegations made and were necessary until a proper investigation of the allegations could occur. However, defendant also acknowledged that it was appropriate to test the truth of the allegations made to her by plaintiff's associate, Christian Villani. The court granted both ex parte requests. Over the next six months, it was claimed that defendant repeated the false and defamatory statements that plaintiff was a danger to his children, students, and staff and that defendant created "unnecessary hysteria and emergency responses." Plaintiff claimed that defendant knew or should have known that her statements were "absurd, false, and defamatory." And, defendant knew that her actions were taken with reckless disregard for the truth because she never conducted an adequate investigation. For example, she knew that the children could not be taken to a foreign country because they did not have passports. After the Ottawa County Sheriff's Department investigated, plaintiff asserted that defendant's allegations were not substantiated, and the case was closed. Yet, defendant refused to withdraw her ex parte requests and continued to claim that plaintiff presented a safety issue to school officials.

Plaintiff alleged that defendant's false and defamatory statements were not privileged and imputed a criminal offense, and therefore, constituted defamation per se. Defendant's ulterior purpose and improper use of process resulted in an abuse of process. Further, defendant's extreme and outrageous conduct rose to the level of intentional infliction of emotional distress. Plaintiff requested $1,000,000 in damages.

In April 2024, defendant moved for summary disposition under MCR 2.116(C)(8) and (10). In the accompanying brief, defendant alleged that, during her seven-year marriage to plaintiff, she was subjected to his erratic, disturbing, and even violent behavior. Plaintiff controlled whether defendant could leave the house, her appearance and attire, and her bedtime. After defendant filed for divorce in 2016, plaintiff purportedly did not accept the separation. During a parenting time drop-off, plaintiff started an argument, prevented defendant from closing her car door, chased the car down the street, and stood in front of the car to prevent defendant from leaving. In 2018, plaintiff placed a GPS tracking device on defendant's car. After defendant contacted the police, plaintiff sent defendant a letter admitting his actions. As a result, defendant successfully obtained PPOs against plaintiff in 2016 and 2018. Plaintiff allegedly continued his vengeful attempt to harass and intimidate defendant by filing this complaint.

On March 6, 2023, defendant received a Facebook message from plaintiff's associate, Villani, that plaintiff intended on killing defendant and her current husband by poison and would kidnap the three children plaintiff shared with defendant. Villani provided a statement detailing

the threats. As a result of this information, defendant communicated the threats to school personnel and sought and received a PPO against plaintiff on March 8, 2023.

Specifically, defendant claimed to alert the school to the potential threats and advised that she hoped that her worrying was for nothing. After defendant obtained the PPO, she updated this information with the children's school. Although plaintiff deliberately redacted key information in his complaint exhibits, the "defamatory" statements outlined in plaintiff's complaint were true. Plaintiff identified six statements in the exhibits as defamatory. But two of those exhibits were correspondence between school personnel, not defendant's statements. Moreover, the statements related to a judicial proceeding and, as a matter of law, were privileged. When statements pertained to a contemplated or ongoing judicial proceeding, absolute privilege applied. Additionally, each statement made was true, was not made negligently, and was covered by qualified privilege relating to the safety of defendant's children as well as other students and staff. Plaintiff failed to show that defendant had an ulterior purpose in filing the PPO action or that she corroborated an ulterior purpose with some other act. Because the statements were not defamatory, the intentional infliction of emotional distress claim also failed. In fact, it was alleged that plaintiff abused the legal process by filing the complaint to intimidate, harass, and extort defendant into modifying the parenting time schedule. Because plaintiff misrepresented the facts and initiated the action for an improper purpose, defendant sought an award of attorney fees and costs incurred in defending the action under MCL 600.2591.

In April 2024, plaintiff filed his response in opposition to defendant's dispositive motion. Generally, plaintiff alleged that defendant misconstrued the salient points in his complaint, ignored the facts offered in support of the claims, and failed to acknowledge the genuine issues of material fact. Additionally, it was inappropriate to dismiss an action in the early stage of discovery. Although defendant relied on Villani's impressions to support her defamatory statements, plaintiff's contacts with Villani revealed that defendant exaggerated Villani's statements and communications, showing that defendant was acting out of personal animus. Villani expressed to plaintiff that he wanted to "drop all legal action" and committed suicide shortly thereafter, reflecting the distress caused by his collusion with defendant. If defendant had not filed her ex parte petitions or raised her false and defamatory statements, Villani would not have experienced such emotional difficulty. Plaintiff asserted that, "Villani's death should haunt Defendant, every day, for the rest of her life." Plaintiff had not weaponized the court system to exact a personal vendetta; instead, defendant had.

Moreover, defendant had acted negligently because examination of Villani's statements revealed they were factually false and absurd. Defendant knew that Villani and plaintiff were former business associates involved in a dispute. It was impossible for plaintiff to take the children to Ukraine because they did not have passports and the country was a warzone. Plaintiff would not have poisoned defendant with fentanyl on a doorknob because skin exposure was not fatal. And, it was not necessary to raise the allegations with the BRPS immediately because defendant was aware that the allegations had been reported to the police at least two months earlier, the police investigated the matter, and Villani was going to be charged with filing a false police report. If defendant thought her claims were legitimate, she would have contacted plaintiff, contacted law enforcement, or contacted plaintiff's parents with whom she had a longstanding relationship. Defendant cannot avoid liability by claiming that she relied on Villani's representations. She

-3-

repeated his defamatory claims to others, defamed plaintiff in the process, and caused him to lose parenting time with his children.

Further, plaintiff met with a doctor who found "no scientific basis" for plaintiff to be separated from his children. The doctor advised that it was "not hard to get a PPO" and concluded that plaintiff had been defamed.

Any privilege that defendant may have in judicial proceedings did not extend to statements made to school officials. Summary disposition was premature before discovery was complete, and there was a fair chance that it would uncover factual support for plaintiff's claims. Therefore, summary disposition should be denied.

In April 2024, defendant filed a reply brief in support of her dispositive motion. Defendant averred that she was unaware of any "investigation" of plaintiff. Once she learned of the threats to harm her family, defendant acted swiftly to protect her children as well as BRPS staff and students. Defendant's statements, in context, were not defamatory or made with malice. Because resolution of the claims could be addressed on the pleadings alone, dismissal was warranted. Although plaintiff claimed that defendant made written and spoken defamatory statements, he failed to identify the exact language and instance of their occurrence. The primary e-mail of which plaintiff complained advised that defendant acquired information from plaintiff's associate, that the statements raised safety concerns, and that defendant hoped that she was worried for nothing. Defendant communicated solely with school administrators. She believed the information acquired from plaintiff's associate was true in light of her own interactions with plaintiff. Defendant made careful statements, subjectively believed in their truth, and engaged in protected speech related to school safety. Thus, evidence of malice was not shown, and the statements were subject to qualified privilege. She did not use the PPO vindictively but as intended. Moreover, defendant's conduct was not extreme and outrageous such that it caused plaintiff emotional distress. Therefore, plaintiff failed to show actionable statements as a matter of law.

After hearing oral argument, the trial court issued an opinion and order granting summary disposition in defendant's favor. The trial court determined that under MCR 2.116(I)(5), plaintiff was entitled to seek amendment of his complaint or even reconsideration of the opinion. The trial court also acknowledged that defendant sought sanctions for filing a frivolous action, but held any hearing in abeyance pending plaintiff's action regarding amendment or reconsideration.

In June 2024, plaintiff moved for reconsideration, contending that the trial court failed to consider the allegations in plaintiff's complaint and affidavit that demonstrated defendant's knowledge of falsity when she raised her claims with third parties. The trial court also improperly applied qualified privilege to statements made to third parties where no shared interest existed. Again, plaintiff alleged that discovery was necessary to determine whether qualified privilege applied. Therefore, the trial court committed palpable error, warranting reversal and reinstatement of plaintiff's complaint. Nonetheless, plaintiff attached an amended complaint to clarify his claims. The trial court denied plaintiff's motion for reconsideration:

> Pursuant to MCR 2.116(I)(5) and 2.118, the Court afforded plaintiff the opportunity to file an amended complaint and/or a motion for reconsideration. Plaintiff has filed both a proposed amended complaint and a motion for reconsideration.

Plaintiff's motion for reconsideration is denied as he has not demonstrated that this Court committed palpable error. In addition, plaintiff's motion to file an amended complaint is denied as the proposed amended complaint adds nothing of legal consequence to the original complaint. In other words, the proposed amended complaint is not justified. Therefore, plaintiff's motions are DENIED.

The trial court noted that defendant could move for a hearing addressing sanctions.

In July 2024, defendant moved for sanctions and a determination of fees, citing MCL 600.2591 and MCR 1.109(E). Defendant alleged that plaintiff brought the complaint to simply harass, embarrass, and injure her. In fact, days after plaintiff filed the defamation action, plaintiff sent defendant an e-mail indicating that they would continue their dispute beyond the children's 18th birthdays or "for years" and the offer to engage in a discussion and to dismiss the defamation case expired that day. Defendant addressed the factors to determine a reasonable fee. Her attorneys expended 52.85 hours between March 14, 2024, and June 28, 2024, and their hourly rate was $520 for lead counsel and $345 for associate counsel.

Plaintiff filed his response to the motion for sanctions. He denied that he filed the complaint for an improper purpose and that his position was devoid of legal merit. Rather, plaintiff opined that he had a reasonable basis to believe that the facts offered in support of his legal positions were true. Plaintiff argued that a reasonable hourly rate would not exceed $325 and no more than 30 hours was reasonable to expend on answering initial pleadings and a motion for summary disposition. The total should be $9,750.

In August 2024, the trial court issued an opinion and order determining that plaintiff's complaint was frivolous, citing: (1) plaintiff's e-mail to defendant offering to dismiss the action that day or the litigation could continue for years, (2) the failure to properly plead a cause of action because the pleadings reflected plaintiff had "an axe to grind," (3) plaintiff's redaction and edits to the e-mails purportedly reflecting defamation, and (4) plaintiff's transference of Villani's allegations onto defendant instead of pursuing a claim against Villani's estate. The trial court then analyzed the factors for determining an appropriate attorney fee of $21,295.75 with uncontested costs of $1,440.47 for a total of $22,736.22. Plaintiff now appeals.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Girimonte v Liberty Mut Ins Co*, 348 Mich App 768, 779; 19 NW3d 921 (2023). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id*. The moving party must identify and support the issues as to which the moving party contends there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Pittsfield Charter Twp v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*.

Summary disposition under MCR 2.116(C)(7) is appropriate in favor of a defendant if the plaintiff's claims are barred because of immunity granted by law. *Milot v Dep't of Transp*, 318 Mich App 272, 275; 897 NW2d 248 (2016). The application of immunity presents a question of law if reasonable minds could not differ on the legal effect of the facts. See *id*. at 275-276. "When reviewing a motion for summary disposition premised on immunity, this Court examines the affidavits, depositions, admissions, and other documentary evidence to determine whether the moving party is entitled to immunity as a matter of law." *Forton v St Clair Co Public Guardian*, 339 Mich App 73, 82; 981 NW2d 103 (2021).

A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of a claim. When examining such a motion, the factual allegations in the complaint must be accepted as true, and the motion is decided premised on the pleadings alone. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

## III. DEFAMATION PER SE

Plaintiff first alleges that the trial court erred in dismissing his defamation per se claim. We disagree.

As an initial matter, defendant contends that plaintiff identified the order appealed from as the order denying reconsideration and filing an amended complaint. Therefore, defendant submits that plaintiff cannot challenge the underlying summary disposition order. This assertion is incorrect. A party claiming an appeal of right from a final order is free to raise issues on appeal related to prior orders. See *Jaber v P & P Hosp, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363572, issued December 6, 2024), slip op at 11-12. An appellant may raise issues arising out of an earlier order and is not required to reserve the right to appeal in a later or final order. *Id*. at ___; slip op at 2. Accordingly, defendant's challenge to the issues that may be raised on appeal is without merit.

To establish defamation, the elements are: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005). "A communication is defamatory if, under all the circumstances, it tends to so harm the reputation of an individual that it lowers the individual's reputation in the community or deters others from associating or dealing with the individual." *Johnson v Mich Minority Purchasing Council*, 341 Mich App 1, 18; 988 NW2d 800 (2022) (quotation marks and citation omitted).

> The essentials of a cause of action for libel or slander must be stated in the complaint, including allegations as to the particular defamatory words complained of, the connection of the defamatory words with the plaintiff where such words are not clear or are ambiguous, and the publication of the alleged defamatory words. [*Pursell v Wolverine-Pentronix, Inc*, 44 Mich App 416, 421; 205 NW2d 504 (1973) (quotation marks and citation omitted).]

Libel is defined as "a statement of and concerning the plaintiff which is false in some material respect and is communicated to a third person by written or printed words and has a tendency to harm the plaintiff's reputation." *Fisher v Detroit Free Press, Inc*, 158 Mich App 409, 413; 404 NW2d 765 (1987). The plaintiff has the burden of proving the elements of a claim of libel. *Id*.

> A libel may consist of a statement of fact or a statement in the form of an opinion, but a statement of opinion is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion. The meaning of a statement is that meaning which, under the circumstances, a reasonable person who sees the statement reasonably understands to be the meaning intended. . . . The question whether or not the meaning of a particular communication is defamatory is one for the court. [*Id*. (citations omitted).]

The declaration made in an action alleging libel must reflect where the alleged libel was published, and this omission fails to state a cause of action for libel. *MacGriff v Van Antwerp*, 327 Mich 200, 204-205; 41 NW2d 524 (1950).

> MCL 600.2911(1) set forth the instances that constitute defamation per se:
>
> > Words imputing a lack of chastity to any female or male are actionable in themselves and subject the person who uttered or published them to a civil action for the slander in the same manner as the uttering or publishing of words imputing the commission of a crime.

In *Cetera v Mileto*, 342 Mich App 441, 450-451; 995 NW2d 838 (2022), this Court addressed defamation per se and damages:

> "MCL 600.2911(1) is the codification of the common-law principle that words imputing a lack of chastity or the commission of a crime constitute defamation per se and are actionable even in the absence of an ability to prove actual or special damages . . . ." *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 728; 613 NW2d 378 (2000) (emphasis added). "Where defamation per se has occurred, the person defamed is entitled to recover general damages in at least a nominal amount." *Id*. With respect to defamation per se, the presumption of general damages is well settled in Michigan jurisprudence. *Id*. And a civil action can proceed despite the lack of any proof of actual or special damages. *Id*. at 728-729. "Accordingly, where a plaintiff brings an action alleging words imputing lack of chastity or commission of a crime under MCL 600.2911(1), the inability to prove damages is not fatal to the claim."

> There are defenses to a defamation action:

> Privilege can be used as a defense in a defamation action. The elements of a qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only. A plaintiff may overcome a qualified privilege only by showing that the statement was made with actual malice, i.e., with

-7-

knowledge of its falsity or reckless disregard of the truth. [*Johnson*, 341 Mich App at 17-18 (quotation marks and citations omitted).]

Once a defendant asserts a qualified privilege, the burden shifts to the plaintiff to show that the statement was made with actual malice. *Prysak v R L Polk Co*, 193 Mich App 1, 15; 483 NW2d 629 (1992). "General allegations of malice are insufficient to establish a genuine issue of material fact." *Id*.

In *Rosenboom v Vanek*, 182 Mich App 113, 114-115; 451 NW2d 520 (1989), the defendant AV alleged that she was sexually assaulted outside of her residence in September 1987. A short time later, AV alleged that she saw the perpetrator, the plaintiff, when she worked at a university restaurant. The plaintiff was charged with fourth-degree criminal sexual conduct as a result of AV's identification of him as her assailant. Nearly a month later, the plaintiff filed a complaint for slander against AV and the defendant KI, an employee of the university's sexual assault counseling center. After the plaintiff had been charged, both AV and KI contacted Dr. Robert Kyes, the plaintiff's supervisor and department chair. AV advised Kyes of the alleged sexual assault, the certainty of her identification, and the possibility of the plaintiff's imprisonment. KI asked Kyes about "the progress of the [plaintiff's] case." But, Kyes declined to provide KI with any details. Nonetheless, KI asked to be kept apprised of any information. Thus, the plaintiff's slander action was premised on the statements made to Kyes by the two defendants. *Id*. at 115-116.

Despite the contact with the plaintiff's superior Kyes, there was no adverse employment action taken against the plaintiff. Moreover, the criminal charge against the plaintiff was dismissed. The defendants moved for summary disposition. AV alleged that she contacted Kyes pursuant to university policy, and her belief that the incidents should be reported. She also believed that her comments about the plaintiff were true. Indeed, university policy encouraged the report of all sexual acts or harassment. KI alleged that she merely inquired into the status of the plaintiff's case, and her comments were not defamatory. The trial court dismissed the claim of slander against AV, concluding that there was a "qualified privilege" of shared interest and the plaintiff failed to demonstrate actual malice to preclude the grant of summary disposition. The trial court also dismissed the claim of slander against KI, determining that her comments about the case status did not rise to the level of slander, and therefore, the plaintiff failed to state a claim upon which relief could be granted. *Id*. at 116-117.

On appeal, the plaintiff claimed that a "qualified privilege" did not attach to communications between a university student and an academic department chair that was unrelated to university study or functions. This Court disagreed and affirmed the grant of summary disposition to the defendants, stating:

> Michigan law recognizes a qualified privilege as applying to communications on matters of "shared interest" between parties. In *Harrison v Arrow Metal Products, Corp*, [20 Mich App 590; 174 NW2d 875 (1969)] we defined the "shared interest" privilege and held that it extends to all bona fide communications concerning any subject matter in which a party has an interest or a duty owed to a person sharing a corresponding interest or duty. The privilege embraces not only legal duties but also moral and social obligations.

In the present case, [the] defendant [AV's] statements made to Kyes come within the "shared interest" privilege. Formerly, perhaps we would not have considered that a student at the university and the chairman of a department would have any shared interest concerning a student's criminal charges against a member of the department. However, current university policies strongly encourage that both employees and students report sexual assaults. Thus, [AV] had an interest in reporting the attack and Kyes shared a corresponding interest in the report. While a strict interpretation or application of the university policy might seem to indicate that [AV] should have contacted the university's affirmative action office or her supervisor, we are not inclined to nullify her privilege for any such technical reasons. [The p]laintiff has failed to demonstrate that [AV's] reports were anything but bona fide statements made between parties sharing a mutual interest.

[The p]laintiff has not established actual malice and, therefore, has not overcome the shared interest privilege. Except for general conclusionary allegations, [the] plaintiff has not supported his claims with proofs sufficient to create a genuine issue of material fact as to actual malice. [The p]laintiff claims that [the] defendant [AV's] affidavit stating that she believed her statements to be true did not form a sufficient basis for granting summary disposition under MCR 2.116(C)(10) . . . . Here, [AV's] affidavit . . . did not stand alone, but was coupled with the testimony of Kyes and [the] plaintiff. [The p]laintiff had to come forward with some documentary evidence to establish actual malice, which [the] plaintiff failed to do. Therefore, summary disposition in favor of [the] defendant [AV] was not in error.

Next, [the] plaintiff claims it was error for the trial court to dismiss his slander claim against [the] defendant [KI] under MCR 2.116(C)(8) for failure to state a claim without granting plaintiff an opportunity to amend. Here, the words spoken by [the] defendant [KI] were not defamatory, and no factual development could make them defamatory. Her statements simply inquired into the status of [the] plaintiff's case. The record does not indicate that [the] plaintiff moved to amend. In fact, [the] plaintiff did not supply the summary disposition transcript on appeal. Furthermore, [the] plaintiff has not indicated how he intends to amend his complaint so as to state a cause of action. [*Id*. at 117-119.]

In the present case, when granting summary disposition of this issue under MCR 2.116(C)(7), the trial court noted that, in plaintiff's affidavit and in the divorce action, plaintiff admitted that Villani informed defendant about threats made by plaintiff. The trial court then concluded:

Concerns relating to student safety that are communicated to school officials fall within the ambit of qualified privilege. Defendant argues that each of her statements to BRPS dealt—at a minimum—with the safety and well-being of [her] own children, in which she undoubtedly has an interest, and to which the school, while the children are in its care, has a duty. This Court agrees. Plaintiff has failed to show that defendant acted with actual malice. Further, this Court finds that there is no evidence of a civil conspiracy between Mr. Villani and defendant.

In fact, defendant's March 6, 2023 e[-]mail states that she hope[d] her worrying [was] for nothing and acknowledged the possibility that [it] could be a false alarm. Regardless of the veracity of the alleged threats themselves, this Court finds that all defendant's statements to BRPS (March 6, March 8, April 26, and August 25) are covered by this qualified privilege. Thus, pursuant to MCR 2.116(C)(7), plaintiff's defamation claims are dismissed.

On March 6, 2023, defendant sent an e-mail to two BRPS administrators. This e-mail stated:

Good afternoon,

I was contacted today by an associate of my ex-husband's. He informed me that my ex, Rick VanderKolk, has been making threats to kill both me and my second husband, and kidnap my children to a foreign country.

* * *

I will be filing for the necessary protective orders tomorrow morning, as well as an emergency order to modify parenting time so that the children do not return to his care under any circumstances.

I wanted to make you aware for two reasons, first so that you can take whatever precautions are necessary to protect the students and staff at Black River, and second to let you know that my kids will be staying home until such a time as it feels safe (for everyone) for them to return.

My ex-husband is, at best, unpredictable. At worst, violent. My hope is that no one is harmed and all my worrying is for nothing, but I didn't want to say nothing, and find out later I should have.

* * *

Also please feel free to forward this e[-]mail to teachers and staff as you fee[l] necessary.

To establish this statement as defamatory, it must be a false and defamatory statement concerning plaintiff. *Johnson*, 341 Mich App at 17. This statement is true. A review of the documentation attached to defendant's response to the dispositive motion reveals that defendant received Facebook messages from Villani indicating that plaintiff threatened to kill defendant and her husband and to kidnap the former couple's three children. Defendant then relayed this information to her children's school.

The next element to satisfy a claim of defamation is that there is an "unprivileged communication to a third party." *Id*. But, Michigan recognizes a qualified privilege applicable to communications on matters of shared interest between parties. This "shared interest" privilege "extends to all bona fide communications concerning any subject matter in which a party has an interest or a duty owed to a person sharing a corresponding interest or duty." *Rosenboom*, 182

-10-

Mich App at 117. The privilege extends not only to legal duties but also moral and social responsibilities. *Id*. We conclude that plaintiff's claim of defamation similarly fails in light of this element. Defendant had a qualified privilege to communicate with BRPS, her children's school, regarding matters of shared interest. Defendant wanted to alert the school to plaintiff's purported statements, and defendant's purpose was to protect her children, the staff, and the other students at BRPS.

In order to overcome defendant's qualified privilege, plaintiff had to show that the statement was made with actual malice, that is, that the statement was made with knowledge of its falsity or reckless disregard of the truth. *Prysak*, 193 Mich App at 15. If a plaintiff raises general allegations of malice, those are insufficient to establish a genuine issue of material fact. Plaintiff contends that defendant's allegations were made with actual malice because Villani raised the allegations earlier, they were investigated by the police, and the claims were rejected. In fact, plaintiff claimed that Villani was going to be charged with filing a false police report. Despite asserting that there was a police investigation that rejected Villani's claims, plaintiff did not submit a copy of the police complaint, and the case closure rejecting Villani's claims. Instead, plaintiff stated the following in his affidavit:

> 22) Prior to contacting [defendant], Villani contacted the police, many weeks earlier, with the same litany of false allegations he communicated to [defendant]. He apologized, profusely, for making these allegations on January 4, 2023 and attempted to restore goodwill with me for the sake of preserving the momentum established in our business project and general friendship. He also wanted to avoid legal consequences for his actions. We both understood the importance of the projects we were working on and reconciled, for a time, to continue our work.

> 23) Meanwhile, the police found no evidence of any of the allegations made by Mr. Villani against me (assault, death threats to family, international parental kidnapping, etc.) and, as more evidence was gathered, the police sought a charging warrant against him for making a false police report.

In order to properly consider evidence when determining the propriety of summary disposition, it must be substantively admissible. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2019). In plaintiff's affidavit, he identified statements made by Villani and failed to demonstrate that those hearsay statements were admissible. More importantly, plaintiff failed to obtain police witnesses that investigated Villani's complaint to testify regarding their firsthand knowledge. Affidavits, depositions, and documentary evidence submitted in support of, or in opposition to, a motion for summary disposition are considered only to the extent that the content or substance would be admissible as evidence. *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999). "The affidavits must be made on the basis of personal knowledge and must set forth with particularity such facts as would be admissible as evidence to establish or deny the grounds stated in the motion." *SSC Assocs Ltd Partnership v General Retirement Sys*, 192 Mich App 360, 364; 480 NW2d 275 (1991). Mere conclusory allegations that are devoid of detail are insufficient to create a genuine issue of material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 372; 547 NW2d 314 (1996). Plaintiff failed to create a factual issue regarding actual malice. He did not provide an affidavit setting forth facts premised on personal knowledge; instead, it contained hearsay and plaintiff has not explained how

-11-

its contents may nonetheless be admissible. Therefore, he has failed to set forth admissible evidence of actual malice to overcome defendant's qualified privilege.

On March 7, 2023, defendant sent another e-mail to BRPS administrators, stating:

I haven't contacted any of the teachers yet. If you would please let them know, that would be helpful.

If/when I have new protective orders and a change to parenting time and access to the kids, I will make sure you have copies on file.

We conclude that this correspondence is not defamatory. It merely provides a procedural status on defendant's next steps, including seeking a PPO and an alteration of parenting time.

On March 8, 2023, in response to an e-mail from the theater teacher addressing the rehearsal and performance schedules, defendant wrote:

Hello Becky,

My daughter [ ] is in theater, and has not been able to make it to rehearsal this week. We are having some major safety concerns relating to her father. She is still eager to participate in theater, including this weekend's performances of Into the Woods. However, I am also trying to weigh the safety concerns for her as well as the other students and staff involved.

I've submitted the necessary paperwork to the courts for protective orders. I will be in touch with the school once I hear back, and we can determine how best to proceed.

Please let me know if you have any questions or concerns. I'm sorry [she] has had to miss the rehearsals this week.

Again, this e-mail does not contain actionable defamatory statements. It only refers to "safety concerns" and does not delineate specific details that impugn plaintiff's reputation in the community. Moreover, it provides a status update to a teacher regarding their shared interests in the safety of defendant's daughter and the school's students and staff. The trial court correctly determined that it was covered by qualified privilege.

Also on March 8, 2023, defendant wrote to BRPS administrators:

I have just received the protective orders, approved by the judge, and I can bring them to the school tomorrow or Friday.

I am scheduled for Thursday in-person conference, but if you need me to skip them, that's ok.

Per the orders, he is not allowed on school property, but it is not enforceable until he's served. I can't find a file server who's available tonight. I think the earliest

he'll get served is tomorrow afternoon. Are you able to tell if he's signed up for conferences tomorrow or Friday? I would like to avoid him if possible.

Please let me know – we can always just wait until Friday to meet. My work is being very accommodating, so whatever fits the school[']s needs and concerns will be fine.

Again, this e-mail is procedural, and the trial court properly found that it was subject to qualified privilege.

Next, defendant wrote an e-mail on April 26, 2023, apprising the school administration of the status of the case:

Good morning,

I have a court hearing today regarding the restraining order and suspension of parenting time for my ex[-]husband. Rick has objected to both orders, and is asking for the court to remove them.

The hearing is at 3pm. Because of the timing during school pickup, and because I don't know how Rick will respond if he's not granted what he wants, my kids will be spending the day with their grandparents. They will not be in school today.

I will send an update after the hearing so you know where things end up.

Again, we agree with the trial court that this e-mail, which provides another procedural update, is covered by qualified privilege, and it does not contain defamatory statements.

Finally, on August 25, 2023, defendant wrote to staff of BRPS:

Good afternoon,

I just wanted to make you both aware [my son's]'s biological father is not permitted to pick him up from school, practice, or any meets. We have a Do Not Release on file with the school, as well as a restraining order forbidding the father[']s presence on school property.

He is on supervised visitation only, due to safety concerns.

This restraining order does not prevent him from attending school events off campus, but it does prevent him from appearing "within my sight". If I am at a meet and he is there, I will be calling the police.

If I am not present, and you happen to see him, please contact me and do not let [my son] go with him. [My son] is as aware of the situation as he should be at his age, and will know he shouldn't go with his dad.

I've included a photo for your reference.

If you have any questions, or need any additional information or documentation, please let me know.

Again, the trial court did not err in concluding that this e-mail was subject to qualified privilege, serves as a procedural update, and does not contain defamatory statements. The statement refers to "safety concerns" and does not expand on the reasons for any concern.

Additionally, defendant attached documentation, and plaintiff acknowledged, that in the divorce action, defendant moved for an ex parte order to modify plaintiff's parenting time. On June 13, 2023, the parties stipulated to modify the family court's March 9, 2023 ex parte order. Plaintiff's parenting time was to be supervised by his parents, who were not to leave the children alone with plaintiff. Plaintiff also agreed to submit to a psychological evaluation that was to include recommendations regarding parenting time and the ability to parent. Because of the stipulation, plaintiff's objection to the ex parte order was reserved until the completion of the psychological evaluation. Additionally, plaintiff agreed to adjourn his motion to terminate the PPO. Finally, this order provided that neither parent was to exercise parenting time in a foreign country that was not a party to the Hague Convention addressing child abduction.

In light of plaintiff's stipulation to supervised parenting time in the divorce action and the agreement to adjourn his objection to the PPO, it is difficult to discern how defendant's e-mail exchanges with BRPS administrators can constitute defamation. Plaintiff acknowledged that the information provided by Villani would be concerning, and his agreement to undergo a psychological evaluation and to have his parents supervise his visits seemingly reflects that an investigation was necessary.

In summary, the trial court did not err in granting summary disposition of plaintiff's claim of defamation per se. Villani contacted defendant and alerted her to death threats that plaintiff made against her and her husband as well as a threat to kidnap the children. As a result of Villani's communications, defendant contacted school administration to notify them of the potential threat, that she hoped that she was worrying for nothing, and that she was seeking court intervention. Defendant's representations were consistent with the information provided by Villani. Additionally, defendant alleged that plaintiff was abusive to her during and after their marriage, and she obtained PPOs against him in 2016 and 2018. Plaintiff did not address these allegations. Although plaintiff alleged that defendant had an obligation to take reasonable action and investigate the claims of Villani first, such as by contacting the police, there is no such requirement imposed in defamation law on defendant in this case. The trial court did not err in granting summary disposition of the claim of defamation per se.

## IV. ABUSE OF PROCESS

Next, plaintiff claims that the trial court erred in dismissing his claim of abuse of process. We disagree.

In *Lawrence v Burdi*, 314 Mich App 203, 211; 886 NW2d 748 (2016), this Court addressed the claim of abuse of process:

"Abuse of process is the wrongful use of the process of a court." *Spear v Pendill*, 164 Mich 620, 623; 130 NW 343 (1911). "This action for the abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." *Id*. at 623 (quotation marks and citation omitted). "To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v Dozorc*, 412 Mich 1, 30; 312 NW2d 585 (1981). Expanding on each of the elements, the *Friedman* Court went on to explain that the act must be something more than just the initiation of a lawsuit, and the ulterior purpose has to be something other than settling a suit. *Id*. at 31. Justice Cooley in his treatise on torts, stated, "One way in which process is sometimes abused, is by making use of it to accomplish not the ostensible purpose for which it is taken out, but some other purpose for which it is an illegitimate and unlawful means." Cooley, *The Law of Torts or the Wrongs Which Arise Independently of Contract* (3d ed), p 356. [*Id*. at 211-212.]

To raise a claim of abuse of process, "the pleadings must allege with specificity an act committed in the use of process 'that is improper in the regular prosecution of the proceeding.' " *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 322; 788 NW2d 679 (2010), quoting *Early Detection Ctr, PC v New York Life Ins Co*, 157 Mich App 618, 629; 403 NW2d 830 (1986). And, the complaint must assert more than the issuance of the process, but the improper use of it after it issued, not a malicious cause in its issuance. *Id*. "A claim asserting nothing more than an improper motive in properly obtaining process does not successfully plead an abuse of process." *Id*. See also *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992) (noting that "there must be some corroborating act that demonstrates the ulterior purpose").

A meritorious claim of abuse of process contemplates a situation where the defendant has availed himself of a proper legal procedure for a purpose collateral to the intended use of that procedure, e.g., where the defendant utilizes discovery in a manner consistent with the rules of procedure, but for the improper purpose of imposing an added burden and expense on the opposing party in an effort to conclude the litigation on favorable terms. [*Dalley*, 287 Mich App at 332, quoting *Vallance v Brewbaker*, 161 Mich App 642, 646; 411 NW2d 808 (1987).]

After summarizing the parties' arguments pertaining to abuse of process, the trial court ruled:

Importantly, during oral argument plaintiff *admitted* that defendant *first* became aware of the falseness of Villani's statements in September, 2023. This was six months after the process was issued. Defendant never moved for an evidentiary hearing to set aside either the protection order or the parenting time order. Plaintiff fails to show any subsequent, ulterior purpose of defendant's use of any process. Accordingly, there is no genuine dispute of fact, and this matter is dismissed under (C)(10).

\* \* \*

There is no evidence of extortion, there was, however, a stipulation and pursuant to its terms, plaintiff agreed to supervised parenting time and to postpone his objection to the March 9 PPO following his submission to a psychological evaluation. Once again, there is no genuine dispute of fact that a corroborating act cannot be shown. Therefore, this matter is dismissed under (C)(10).

Plaintiff cavils that defendant *should have* done several things upon being notified of the threats, including contacting plaintiff, contacting the police, and conducting an investigation before seeking *ex parte* orders. Plaintiff cites no authority to establish that defendant would have a duty to take these steps prior to requesting relief from the Court. Regarding a PPO, a court may *not* consider the absence of a police report in declining to issue a PPO. Plaintiff's complaint that he was not contacted prior to seeking *ex parte* relief borders on the absurd—it cannot be reasonably expected that when one is threatened with death that the person must "get permission" from the alleged bully/abuser before going to the court for protection. [Footnote omitted.]

In the present case, defendant received unsolicited correspondence from Villani. Through Facebook, Villani reported to defendant that plaintiff had made threats against defendant and her husband and to kidnap her children. Defendant took immediate action to protect her family. She requested that Villani provide specific information regarding plaintiff's threats. Defendant then petitioned ex parte for a PPO and, in the divorce action, sought to restrict plaintiff's parenting time. Her requests were granted. Plaintiff contends that he successfully pleaded a claim of abuse of process because defendant extorted plaintiff into engaging in supervised parenting time.

But the record reflects that plaintiff entered into a stipulation in the divorce action to supervised parenting time, a psychological evaluation, and a recommendation regarding his parenting time following the evaluation. This stipulation further provided that plaintiff would not pursue his objection to the PPO until after the psychological evaluation was complete. Although plaintiff contends that defendant committed an abuse of process by engaging in extortion designed to restrict his parental rights, plaintiff was represented by counsel in the action, and he recognized that he accepted the advice of his counsel.

In light of the allegations conveyed by Villani, plaintiff's challenge is without merit. Defendant learned from Villani that plaintiff threatened to kill her and her husband and to kidnap her children. These allegations do not reflect an improper motive in obtaining process. The cause of action for abuse of process requires that the improper use of it occur after it is issued. We are unable to conclude that defendant caused plaintiff to enter into a stipulation and order agreeing to supervised parenting time when he was represented by counsel. Moreover, defendant alleged that plaintiff had a history of disturbing behavior that resulted in the issuance of PPOs in 2016 and 2018, claims that plaintiff did not dispute.

Additionally, plaintiff claimed that defendant should not have pursued the PPO or the ex parte change to parenting time. Instead, he offered that a reasonable person would have called the police, called him, or called his parents. As the trial court noted, it is absurd to suggest that a person must consult with their abuser before seeking court protection. Plaintiff also suggested that if defendant felt there was a true emergency, she would have called the police. However, the police

would have taken time to conduct an investigation. But, the divorce judge would presumably have a familiarity with the parties and their prior history and been able to ascertain the need for immediate action. Further, the family court judge assigned to preside over the ex parte PPO would have been able to take judicial notice of the court's other files to learn whether exigent action was necessary. Plaintiff failed to demonstrate that abuse of process occurred in the issuance of process after it issued. Defendant did not have the gift of foresight to determine how the courts would rule or that plaintiff would engage in a stipulation designed to protect the children until a psychological evaluation would occur, particularly premised on the advice of counsel. Plaintiff's blanket assertion of "extortion" did not create a genuine issue of material fact, and the trial court did not err in dismissing the abuse of process claim.

## V. SUMMARY DISPOSITION–AMENDED COMPLAINT

Next, plaintiff alleges that the trial court erred in failing to accept his amended complaint for filing. We disagree.

"A decision to deny a motion to amend pleadings is within the discretion of the trial court, and reversal is only appropriate when the trial court abuses that discretion." *Kostadinovski v Harrington*, 511 Mich 151, 149; 999 NW2d 318 (2023). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). "A trial court necessarily abuses its discretion when it makes an error of law." *Id*. at 149-150 (quotation marks and citation omitted.) The interpretation of a court rule presents a question of law which is reviewed de novo. See *Tyler v Findling*, 508 Mich 364, 369-370; 972 NW2d 833 (2021). The principles of statutory interpretation are applied to the interpretation of the court rules. *Id*. When the language of the court rule is unambiguous, the plain meaning of the rule will be enforced. *Id*. at 370.

In the trial court's May 31, 2024 opinion and order granting defendant summary disposition, it stated that it would take judicial notice under MRE 201 of plaintiff's objection to the ex parte parenting time order in March 2023 as filed in the 2016 divorce action. In that objection, plaintiff expressed that the outlandish claims by Villani caused understandable concern to defendant. And, at the conclusion of the trial court's opinion, it noted that defendant had moved for sanctions, claiming that plaintiff's complaint was frivolous. The trial court stated that if defendant wished to show that the case was frivolous, she must schedule a hearing within 120 days with all exhibits and evidence submitted at least 21 days before the hearing. The trial court then stated in conclusion:

> For the reasons stated above, defendant's Motion for Summary Disposition pursuant to MCR 2.116(C)(7), (8) and (10) is GRANTED. Accordingly, plaintiff's Complaint is hereby dismissed. Under MCR 2.116(I)(5), plaintiff is given the opportunity to amend his complaint. This may be filed with, or in lieu of, a motion for reconsideration in which the propriety of judicial notice under MRE 201(e) may also be argued. Should plaintiff take this action, then the Court's scheduling comments in Section IV [sanctions] of this Opinion are set aside pending resolution of any motion.

-17-

After the trial court renders its decision on summary disposition, MCR 2.116(I)(5) provides: "If the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."

When summary disposition is granted under MCR 2.116(C)(7) premised on immunity granted by law, a plaintiff is not entitled to amend his complaint under MCR 2.116(I)(5). *Forton*, 339 Mich App at 85. Because the trial court granted summary disposition of the defamation per se claim under MCR 2.116(C)(7), he was not entitled to amend this claim.

Plaintiff contends that the trial court allowed him to file an amended complaint, and the dismissal of the amended complaint without requiring defendant to file a motion for summary disposition violated the procedural rules. We disagree. The trial court's opinion and order indicated that plaintiff was given the "opportunity" to file an amended complaint in accord with MCR 2.116(I)(5), not that the amended complaint would be accepted for filing. MCR 2.118 governs amended and supplement pleadings, and states, in pertinent part:

(A) Amendments.

(1) A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party, or within 14 days after serving the pleading if it does not require a responsive pleading.

(2) Except as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires.

MCR 2.110(A)(1) defines a pleading to include "a complaint."

Generally, leave to amend a complaint is freely given when justice so requires. MCR 2.118(A)(2). But a motion to amend may be denied for (1) undue delay, (2) bad faith or dilatory motive by the moving party, (3) failure to cure deficiencies in previously allowed amendments, (4) undue prejudice to the opposing party by allowing amendment, or (5) futility of the amendment. *Hamood v Trinity Health Corp*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364627) slip op at 10. Leeway granted to a plaintiff to amend a complaint does not permit carelessness or gamesmanship. *Id*. at 11. And the trial court maintains the discretion to deny leave to amend the complaint. *Id*.

Technically, plaintiff did not comply with the trial court's instruction. The trial court permitted plaintiff "the opportunity" to amend the complaint. It did not state that it would accept the amended complaint.

And plaintiff filed his motion for reconsideration. At the conclusion of the motion, plaintiff stated:

Plaintiff submits that the above stated matters overlooked by the Court constitute "palpable error", the reversal of which should result in reinstatement of Plaintiff's Complaint.

-18-

Plaintiff is filing an Amended Complaint simultaneously with this Motion for Reconsideration. Such Amended Complaint addresses the issues in the trial court's Opinion and Order, including and clarifying his stance on defamation as to malice and qualified privilege, and abuse of process as to ulterior motive and collateral acts.

However, amendments must be submitted to the court in writing, MCR 2.118(A)(4). "If a plaintiff does not present its proposed amendment to the court, there is no way to determine whether an amendment is justified." *Anton, Sowerby & Assocs v Mr C's Lake Orion, LLC*, 309 Mich App 535, 551; 872 NW2d 699 (2015). Plaintiff should not have merely filed the amended complaint with the court, but should have sought leave to amend the complaint and submitted the proposed complaint to the court for review. *Id*.

In the present case, plaintiff merely filed the amended complaint. When ruling on the motion for reconsideration, the trial court addressed the amended complaint and denied it because "the proposed amended complaint adds nothing of legal consequence to the original complaint." In effect, the trial court ruled that plaintiff's proposed amendment was futile. Indeed, a review of the amended complaint reveals that plaintiff merely added additional facts in an attempt to cure the deficiencies previously raised by the trial court. For example, in the abuse of process claim, plaintiff alleged that defendant used the ex parte orders to thwart communication with plaintiff's eldest daughter. Additionally, plaintiff asserted that corroboration of the abuse of process was evidenced by the fact that "Defendant repeated and/or allowed the false allegations against Plaintiff to spread like wildfire to public school personnel multiple times, over many months, though she knew the allegations were false." These additional facts failed to cure the deficiencies pertaining to the elements of his claims. And they failed to account for plaintiff's stipulation to restrict his parenting time to supervised, plaintiff's failure to contest the PPO at that time, and plaintiff's participation in a psychological evaluation while advised and represented by counsel. Under the circumstances, additional facts did not remedy the previously identified deficiencies, and the trial court did not abuse its discretion in denying amendment of the complaint.

## VI. FRIVOLOUS COMPLAINT

Plaintiff contends that the trial court erred in concluding that he filed a frivolous complaint. We disagree.

"This Court reviews for clear error a trial court's finding that a civil action was frivolous." *Tolas Oil & Gas Exploration Co*, 347 Mich App at 319. "A finding is clearly erroneous when this Court is left with the definite and firm conviction that the trial court has made a mistake." *Id*. "To the extent that the trial court had discretion to order a sanction, this Court reviews the trial court's exercise of discretion for abuse." *Id*. "A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes." *Id*.

In *Tolas Oil & Gas Exploration Co*, 347 Mich App at 320-321, this Court addressed the filing of a frivolous action:

The Legislature provides that

if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney. [MCL 600.2591(1).]

A civil action is frivolous if "[t]he party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party," the "party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true," or the "party's legal position was devoid of arguable legal merit." MCL 600.2591(3)(a).

A similar rule governs the filing of frivolous documents. When a party or lawyer signs a document filed with the court, the party's signature constitutes certification that "he or she has read the document," that "to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document [was] well grounded in fact and [was] warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," and that the "document [was] not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." MCR 1.109(E)(5). If the trial court finds that a document was signed in violation of MCR 1.109(E)(5), the trial court must "impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees." MCR 1.109(E)(6).

Whether a claim was frivolous must be determined using an objective standard considering the circumstances concerning the claim at the time it was asserted. See *Bauer-Rowley v Humphreys*, 344 Mich App at 59. Moreover, not every error in legal analysis constitutes a frivolous position. *Id.* If the trial court goes beyond assessing the merits of a legal position, such as when a trial court finds that an action was brought for an improper purpose, this Court must defer to the trial court's superior position to judge the parties and the evidence. See MCR 2.613(C); see also *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 147; 946 NW2d 812 (2019). A trial court must articulate a sufficiently clear basis for its decision to allow this Court to review the finding for clear error. See *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 79; 903 NW2d 197 (2017). Finally, although MCR 1.109(E)(6) provides the trial court with the discretion to select an appropriate sanction for signing a document in violation of the court rule, the Legislature did not give trial courts the discretion to fashion a remedy for filing a frivolous action. Rather, the statute requires the trial court to order the party filing the frivolous action to compensate the opposing party for their reasonable attorney fees and costs incurred in defending the frivolous action if the trial court finds that the action was frivolous. MCL 600.2591(1).

In determining that plaintiff's action was frivolous, the trial court noted that, within days of serving defendant with the defamation action, plaintiff sent defendant an e-mail. Plaintiff advised defendant that he would not be "put through hell, by you[.]" Plaintiff also advised that until defendant agreed to work out their matters in an honest and productive manner their litigation would continue for years. Additionally, plaintiff's offer to engage in a discussion to dismiss the defamation case expired that day. From this e-mail, the trial court determined "it is evident by timing and content that plaintiff was using the current unfounded civil matter as a tool to intimidate defendant into capitulating to his demands." Plaintiff promised that this lawfare would last "for years, and years." The trial court also determined that the lawsuit was frivolous because plaintiff engaged in gratuitous attacks, blaming defendant for Villani's death and stating that she should be haunted every day. The trial court further found that plaintiff failed to state a cause of action, failed to support his claims with factual and legal support, and "cherry-picked and improperly edited exhibits" to falsely accuse defendant. The trial court concluded by stating:

> In sum, each of plaintiff's claims are frivolous because they are devoid of arguable legal merit, and because defendant "wins on the entire record" as discussed above. Defendants are entitled to costs and reasonable attorney fees pursuant to MCL 600.2591. Pursuant to MCL 600.2591(1), these costs and reasonable attorney fees shall be assessed against plaintiff as the "nonprevailing party."

> Regarding whether defendant is also entitled to costs and reasonable fees under MCR 1.109(E), this Court finds that plaintiff did not make a reasonable inquiry into the factual and legal viability of the complaint as noted above. Frankly, he let his emotions rule the day. Thus, based on an objective standard and on the particular facts and circumstances of the case, this Court finds that plaintiff's filing of the complaint was frivolous and unreasonable.

We cannot conclude that the trial court clearly erred in determining that sanctions were warranted for filing a frivolous action. Villani sent communication to defendant expressing concern for her family's well-being and safety. After defendant asked that Villani provide her with a statement, Villani sent her correspondence characterizing plaintiff as a manipulator. Villani also disclosed a plot by plaintiff to kill defendant and her husband and to kidnap the children. Defendant promptly filed a petition for an ex parte PPO and to restrict plaintiff's parenting time in the divorce action. Although plaintiff stipulated to supervised parenting time, a psychological evaluation, and forbearance on his objections to the PPO until after the psychological evaluation was prepared, he claimed that it was defendant who engaged in extortion to obtain this relief. Yet, plaintiff stipulated to the terms and was represented by counsel at that time. Moreover, defendant's e-mail correspondence to BRPS administrators indicated that an issue of threats arose with plaintiff, that she hoped that it was untrue, and that she would keep the school apprised. Defendant noted that she gave notice for the safety of the students and personnel. Defendant's remaining e-mails to the schools were predominantly procedural. She did not reveal to school officials the sordid details contained in Villani's correspondence. Under these facts and circumstances, the trial court did not clearly err in its determination that plaintiff's complaint was frivolous.

## VII.  ATTORNEY FEES AND COSTS

Lastly, plaintiff submits that the trial court erred in its calculation of attorney fees and costs for filing the frivolous action.  We disagree.

"We review the amount of an award of sanctions for an abuse of discretion." *Vittiglio v Vittiglio*, 297 Mich App 391, 408; 824 NW2d 591 (2012).  See also *Pirgu v United Servs Auto Ass'n*, 499 Mich 260, 274; 884 NW2d 257 (2016).  Factual findings underlying a sanction award are review for clear error.  *Colen v Colen*, 331 Mich App 295, 305;  952 NW2d 558 (2020).  "A finding is clearly erroneous when this Court is left with the definite and firm conviction that the trial court has made a mistake."  *Tolas Oil & Gas Exploration Co*, 347 Mich App at 319.

In *Pirgu*, 499 Mich at 282, our Supreme Court delineated the follow factors to ascertain the reasonableness of an attorney fee award:

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent.

These factors are not exclusive, and the trial court may consider any additional relevant factors.  In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors.

The trial court issued an eight-page opinion determining that sanctions, including an award of attorney fees and costs, were warranted for filing a frivolous action.  The trial court cited: (1) MCR 1.109(E)(7) ("In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2)."), (2) MCR 2.625(A)(2) ("In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591."), (3) MCL 600.2591(2) (the amount of costs and fees awarded shall include all reasonable costs actually incurred "including court costs and reasonable attorney fees."), (4) *Kitchen v Kitchen*, 465 Mich 654, 662; 641 NW2d 245 (2002), and (5) *Adamo Demolition Co v Dep't of Treasury*, 303 Mich App 356, 369; 844 NW2d 143 (2013).

-22-

The trial court then examined the hourly rates of lead and junior counsel, noted that the majority of the charges were performed by junior counsel, and calculated the reasonableness of the hourly rate, the hours expended, and the total charges for the geographic location and practice area. The court properly considered the State Bar of Michigan Economics of Law Practice Survey when considering the reasonableness of defendant's attorney fees. *Vittiglio*, 297 Mich App at 409. The court noted that plaintiff advocated for a lower rate and less hours "without much analysis."

The trial court then found that lead counsel was a highly experienced attorney employed by a large law firm justifying an increase from the median rate; however, junior counsel was a first-year associate with limited experience justifying a downward departure from the mean rate. With regard to the case difficulty, the trial court found that the fact pattern was not complicated, even so, the area of law was nuanced. Moreover, plaintiff caused the time expenditure on the case by filing a multi-count complaint that required legal research on all claims. The court further concluded that a high skill level was necessary to properly analyze the issues and avoid lengthy litigation. Additionally, the skills employed by counsel allowed defendant to completely prevail within a short period of time. The court found that the expenses incurred "were minimal and reasonable[.]" Defense counsel had previously represented defendant in her family law matters such that plaintiff should not be surprised by their compensation rate. Lastly, the court found that there was no time limit imposed on the litigation and the fee was fixed at an hourly rate. The trial court found that the rates charged by lead and junior counsel were justified and reasonable under the circumstances.

In light of the trial court's analysis of the *Pirgu* factors, we cannot conclude that the trial court's factual findings were clearly erroneous, *Colen*, 331 Mich App at 305, or that the amount of the sanction award constituted an abuse of discretion, *Vittiglio*, 297 Mich App at 408.

Affirmed.


/s/ Anica Letica
/s/ Michael J. Kelly
/s/ Philip P. Mariani